FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 18, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULIE V.,[1]<br><br>    Plaintiff,<br><br> vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br>    Defendant. | No. 1:19-cv-03032-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

_____

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

8. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

ORDER - 4

1    If the severity of the claimant's impairment does not meet or exceed the

2  severity of the enumerated impairments, the Commissioner must pause to assess

3  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4  defined generally as the claimant's ability to perform physical and mental work

5  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

6  404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

7    At step four, the Commissioner considers whether, in view of the claimant's

8  RFC, the claimant is capable of performing work that he or she has performed in

9  the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

10  capable of performing past relevant work, the Commissioner must find that the

11  claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

12  performing such work, the analysis proceeds to step five.

13    At step five, the Commissioner considers whether, in view of the claimant's

14  RFC, the claimant is capable of performing other work in the national economy.

15  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

16  must also consider vocational factors such as the claimant's age, education, and

17  past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

18  adjusting to other work, the Commissioner must find that the claimant is not

19  disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

20

other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 13, 2015, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of March 25, 2014.  Tr. 218-26.  The application was denied initially, Tr. 152-58, and on reconsideration, Tr. 160-66.  Plaintiff appeared before an administrative law judge (ALJ) on October 31, 2017.  Tr. 41-62.  On March 28, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-38.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 25, 2014.  Tr. 19.  At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar and cervical degenerative disc disease, status post lumbar and cervical surgical intervention, depressive disorder, and anxiety disorder.  Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 19. The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can frequently use her upper extremities to handle, finger and feel. She can frequently use her upper extremities to reach at or below shoulder level. However, she cannot reach overhead. She can occasionally stoop and crouch. She can never squat, crawl, kneel, or climb stairs, ramps, ropes, ladders, scaffolds. She will be off task at work 8% of the time, but still meet the minimum production requirements of the job. She will be absent from work one time per month. She is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments.

Tr. 21-22.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 30. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as charge-account clerk, call out-operator, and document preparer. Tr. 31-32. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 25, 2014, though the date of the decision. Tr. 32.

On December 21, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated lay witness evidence; and

3. Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 9.

## DISCUSSION

### A.    Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 14 at 11-16. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The

ORDER - 8

claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 23.

### 1. Symptoms Improved with Surgical Intervention

The ALJ found that Plaintiff's symptom testimony was inconsistent with the level of improvement she showed following her cervical and lumbar spine surgeries, and effective pain control with the use of her medications. Tr. 24-26. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled

with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ observed that while Plaintiff's cervical arthroplasty with disc replacement at the C5-C6 on April 7, 2015 did not resolve her cervical spine impairment, her treatment records and examination findings showed that her symptoms were improved.  Tr. 23-24; *see, e.g.,* Tr. 424, 504, 511 (April 2015: after her cervical arthroplasty with disc replacement at the C5-C6, Plaintiff reported that she had left shoulder pain, but she no longer had numbness and tingling down her arms); Tr. 506 (July 2015: Plaintiff reported that her neck pain was resolving and continuing to get better, and that the pain in her arms was gone); Tr. 707, 719, 746, 748 (For nearly two years following her surgery, Plaintiff complained infrequently of neck pain and pain to her right hand digits); Tr. 626, 732, 755, 758, 760 (January and August 2017: Plaintiff's more recent radiographic evidence revealed post-surgical changes of the C5-C6 with resultant artifact and mild central canal stenosis at the C5-C6 and small disc bulges of the C4-C7 discs, but otherwise, Plaintiff had unremarkable paraspinal tissue and atlantoaxial joints, with no obvious extradural defects or spinal cord compression); Tr. 746 (July 2017: While her medical provider noted that the metallic artifact seen on Plaintiff's MRI made

it difficult to determine whether Plaintiff's implanted disc was impinging on her spinal cord or was just a blooming artifact, the imaging did not explain her right hand pain, and her medical provider noted that the nerve roots that would be involved in her alleged right hand pain were not the nerve roots that would be affected by her prior cervical procedure; there was no evidence of compression of either the C7 or C8 nerve roots); Tr. 751 (August 2017: Plaintiff's electrodiagnostic evidence revealed no findings of median or ulnar neuropathy, cervical radiculopathy, or brachial plexopathy affecting either upper extremity); Tr. 755-56 (August 2017: Plaintiff's medical provider noted there was not a clear explanation for the source of Plaintiff's problems, "at least not stemming from her neck," and that her symptoms were not significant enough for Plaintiff to be interested in considering further surgical intervention at that time).

The ALJ also observed that while Plaintiff's three lumbar spine surgical procedures did not resolve her spinal impairment, the medical record revealed that she received some symptom improvement. Tr. 24-25; *see, e.g.,* Tr. 466, 472, 508 (June 19, 2014: Plaintiff underwent a lumbar decompression with a laminectomy/foraminotomy of the bilateral S1 nerve); Tr. 495, 502, 538 (July 2014 and August 2014: Plaintiff reported that the procedure improved her lumbar and radicular pain); Tr. 496, 498 501-02 (During late 2014, Plaintiff reported falling at her home more than three times, and she also reported having back pain after

lifting buckets of dirt while helping her husband in the yard; Plaintiff reported that she felt a popping sensation when she walked); Tr. 445-46 (January 2015: radiographic evidence revealed degenerative changes of the lumbar spine, most prominent at the L5-S1, with evidence of an L5 laminectomy with residual central protrusion of the L5-S1 disc, but there was no evidence of significant instability upon flexion and extension); Tr. 506 (July 2015: amid complaints of lower back pain and some reduced lower extremity sensation, it was recommended that Plaintiff receive epidural facet injections with a possibility for a lumbar fusion in the future); Tr. 568, 578 (September 2015: Plaintiff sought emergent treatment due to increased back pain after a drive to/from Spokane, Washington; an imaging study at that time revealed stable and unchanged degenerative changes, but there was an increased T2 signal involving the right S1 descending nerve root); Tr. 622 (October 19, 2015: Plaintiff underwent a lumbar spine fusion at the L5-S1); Tr. 619 (November 3, 2015: following her fusion, Plaintiff reported having some numbness/burning in the right leg on the S1 distribution, but she reported having overall pain improvement); Tr. 608 (October 2015: imaging studies did not reveal hardware complication); Tr. 620 (December 2015: Plaintiff reported that she fell off her back porch causing left sided back pain); Tr. 620, 624 (December 2015: aside from her postsurgical changes of an anterior fusion at the L5-S1, her radiographic evidence revealed no acute abnormalities or instability; instead, she

had intact hardware, normal alignment, well-preserved disc space, unremarkable sacroiliac joints, no significant degenerative facet changes and no abnormal movement between flexion and extension); Tr. 698 (April 2016: Plaintiff reported having constant back pain that radiated to her right foot; she advised that her second lumbar surgery did not relieve her pain); Tr. 627, 677, 700, 733 (April 2016 and June 2016: her imaging study revealed mild lumbar spine degenerative disc disease and facet hypertrophy, most pronounced at the L5-S1 and evidence of her anterior fusion of the L5 to S1, however, she had no evidence of listhesis (or nerve root contact), implant loosening/failure, instability, fracture, tumor or infection, and her bone marrow signal height and alignment were normal); Tr. 659 (November 2016: Plaintiff reported that she fell down the stairs at her home twice, and she felt a pop in her lower back with numbness and tingling down her left leg); Tr. 649 (January 2017: Plaintiff sought emergent treatment after falling again at her home and as a result of this fall, and she complained of lower back pain and right sided numbness/tingling); Tr. 631, 633, 711 (January 25, 2017: Plaintiff underwent a right L4 laminectomy, L4-L5 facetectomy, and transforaminal lumbar fusion); Tr. 713 (February 6, 2017: Immediately following her lumbar fusion, Plaintiff reported having 60% improvement of her back pain since prior to her surgery, and she advised that her pain was only occasional and responsive to her pain medications); Tr. 717 (May 2017: Three months after her lumbar fusion,

ORDER - 14

Plaintiff's objective evidence showed no evidence of implant loosening/failure or instability in flexion extension, and instead, she had evidence of healing of the fusion).

The ALJ also noted that the record revealed the balance of Plaintiff's modalities of treatment improved some of her symptoms. Tr. 25; *see, e.g.,* Tr. 500, 679, 688, 703, 722, 725, 748 (Plaintiff reported having between 30% to 60% improvement in pain after her cervical/lumbar epidural injections); Tr. 503, 532, 541, 620, 628, 664, 671, 683, 688, 692, 695, 737 (Plaintiff was treated with a back brace, muscle relaxants, oral steroids, trigger point/epidural steroid injections, and anti-inflammatory, nerve, and narcotic pain medications). Further, the ALJ found that the medical evidence showed Plaintiff had pain control with the use of her medications. Tr. 26; *see, e.g.,* Tr. 496 (Plaintiff reported having periods in which she could reduce her pain medication below her prescribed levels); Tr. 402, 495, 504 (Although Plaintiff infrequently advised of medication side effects such as sleepiness, itching, or grogginess, her medical providers made medication/dosage modifications that were effective at relieving some of Plaintiff's symptoms). The ALJ reasonably concluded that the improvement Plaintiff reported in her symptoms after her cervical and lumbar spine surgeries, along with pain medication and the use of different modalities of treatment, supported a finding that Plaintiff was capable of sedentary work with additional functional limitations,

which was inconsistent with Plaintiff's subjective symptom claims. Tr. 27.

Plaintiff argues that although she had some improvement for a limited time after

surgical intervention, the record shows that she experienced continuing severe

symptoms and her medical provider reported that Plaintiff "has not responded well

to prior surgery." ECF No. 14 at 13 (citing Tr. 523). It is the ALJ's responsibility

to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as

it is here, it should not be second-guessed. *Rollins v. Massanari*, 261 F.3d 853,

857 (9th Cir. 2001). The Court must consider the ALJ's decision in the context of

"the entire record as a whole," and if the "evidence is susceptible to more than one

rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of

Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

Here, the ALJ reasonably concluded, based on this record, that Plaintiff's

impairments when treated were not as limiting as Plaintiff claimed. Tr. 23-26.

The ALJ's finding is supported by substantial evidence.

    *2. Failure to Follow Treatment Recommendations*

       The ALJ found that Plaintiff's symptom complaints were inconsistent with

her failure to follow treatment recommendations. Tr. 26. "A claimant's subjective

symptom testimony may be undermined by an unexplained, or inadequately

explained, failure to . . . follow a prescribed course of treatment." *Trevizo v.*

*Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted). Failure to assert a reason for not following treatment "can cast doubt on the sincerity of the claimant's pain testimony." *Id.*

Here, the ALJ noted that Plaintiff alleged disabling limitations due to back and neck impairments. Tr. 22-23. The ALJ observed that Plaintiff was advised to participate in physical therapy on at least six occasions, Tr. 26; *see, e.g.,* Tr. 495 ("At this point, the recommendation would be to do physical therapy"); Tr. 503 ("I would recommend a brace and some physical therapy exercise as she is doing"); Tr. 505 ("We will get her started in some physical therapy at Peak Performance for her cervical spine"); Tr. 704 ("I recommended physical therapy and a repeat injection"); Tr. 717 ("I have recommended brace wearing and physical therapy"); Tr. 738 ("I would recommend that we get her into some physical therapy dedicated to her spine"). However, the ALJ noted that while Plaintiff received some physical therapy, Tr. 501-02, 705, there were instances in which her medical providers noted that she did not always pursue such treatment as recommended. Tr. 26 (citing Tr. 671, 728). Plaintiff argues that her depression interfered with her ability to complete physical therapy each time it was recommended. ECF No. 14 at 17. In support of this contention, Plaintiff asserts the evidence showed that she had some "worse days" where she had trouble getting up and doing anything. ECF No. 14 at 17 (citing Tr. 596). However, the ALJ noted that Plaintiff frequently denied

having depression, little interest or pleasure in doing things, or feelings of hopelessness. Tr. 27 (citing Tr. 679, 682, 685). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. On this record, the ALJ reasonably concluded that Plaintiff's alleged disabling limitations were inconsistent with her failure to follow treatment recommendations.

### 3. *Lack of Objective Medical Evidence*

The ALJ found that Plaintiff's physical and mental symptom complaints were not supported by the medical evidence. Tr. 26, 28. Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

### a. Physical Impairments

The ALJ determined that Plaintiff's allegations of disabling back and neck impairments were out of proportion to physical examinations which regularly revealed benign findings. Tr. 26; *see, e.g.,* Tr. 469, 535, 546, 569, 630-31, 645,

649, 699, 707-08, 710-11, 729 (Plaintiff's medical providers frequently observed that she had active and pain free range of motion of her bilateral shoulders, elbows, wrists, hips, knees, ankles, cervical spine and lumbar spine); Tr. 404, 416, 469, 502, 504, 506, 519, 532, 543, 546, 552, 620-21, 649-50, 658, 661, 729, 746, 749 (Plaintiff commonly exhibited normal extremity sensation, motor tone and strength, as well as normal swallow capability and full deep tendon reflexes at the ankles and 1+ at the knees); Tr. 620-21, 645-46, 650 (Plaintiff had healed spinal incisions and normal, or no change in, neurovascular testing); Tr. 469, 667, 749 (Plaintiff's medical providers observed that she had negative Romberg, Babinski, and Hoffman signs); Tr. 619, 673 (Plaintiff demonstrated negative straight leg raise testing and improved sensory changes of the S1 dermatome); Tr. 496, 500-01, 552, 569, 620-21, 631, 650, 658, 699, 708, 711, 717, 729, 737-38 (Plaintiff's medical providers observed that she ambulated normally and had a full gait and station). The ALJ observed that the medical evidence also revealed instances where Plaintiff had mild positive straight leg raise testing, reduced muscle strength in the left upper extremity, diminished sensation in upper extremities, and sciatic distribution of pain/numbness down her bilateral S1 nerve. Tr. 26 (citing Tr. 469, 502, 506, 552, 661). The ALJ noted that, on occasion, Plaintiff exhibited a "very antalgic" gait, absent reflexes at the knees, right patellar, and left biceps/brachioradialis, and tenderness of the cervical spine, axial skeleton, left

ORDER - 19

greater trochanter, bilateral sacral joints and lumbar muscles. Tr. 26 (citing Tr.

404, 469, 496, 498, 500, 506, 525, 532, 535, 543, 546, 552, 621, 649, 671). The

ALJ also noted that Plaintiff intermittently demonstrated reduced range of motion

of her lumbar spine, her medical providers infrequently observed that she had a

careful and somewhat slowed gait and motor coordination, and in instances after

her surgical procedures, she ambulated with an assistive device. Tr. 26 (citing Tr.

404, 543, 569, 595, 619). However, the ALJ concluded that Plaintiff's abnormal

clinical presentations were offset by generally benign presentations noted

elsewhere in the record. Tr. 26.

   b.  Mental Impairments

   The ALJ found that, despite Plaintiff's description of limiting depression and

anxiety, providers frequently observed normal mental status examinations. Tr. 28,

239; *see, e.g.,* Tr. 469, 501, 618, 631, 639, 645-46, 680, 686, 689, 699, 703, 720,

729, 737-38 (Plaintiff was observed as alert, oriented, calm, pleasant, well-

groomed, and cooperative); Tr. 469, 699, 703, 720, 729 (Plaintiff frequently

exhibited an appropriate mood/affect, full attention span, fluent speech, appropriate

knowledge, and intact cognition); Tr. 469, 501, 540, 573, 618, 631, 639, 699, 703,

720, 729, 737-38 (Plaintiff demonstrated normal memory, insight, and judgment,

and she denied having suicidal ideations). The ALJ highlighted an isolated

instance where Plaintiff was observed as depressed with an abnormal affect. Tr. 28

ORDER - 20

(citing Tr. 540). Plaintiff argues that, "while there were benign findings at times, there were also many abnormal findings that support [Plaintiff's] allegations." ECF No. 14 at 13. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of physical or mental impairments alleged by Plaintiff. Tr. 26, 28. The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with the other identified reasons, to discount Plaintiff's symptom complaints.

### 4. Limited Mental Health Treatment

The ALJ found that Plaintiff's lack of treatment for her longstanding depression further indicated that her mental impairment did not cause any significant limitations in her functioning. Tr. 27. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*,

495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 Fed. App'x 45, *2 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ determined that Plaintiff's lack of treatment for depression detracted from the reliability of her statements about her mental state. Tr. 27. Plaintiff reported that she was unable to work in part due to depression and anxiety. Tr. 239. However, the ALJ noted that Plaintiff had no documented mental health care during the relevant period, despite a medical provider's suggestion in August 2014 that she participate in counseling. Tr. 27 (citing Tr.

ORDER - 22

540-41).  The ALJ noted that Plaintiff was treated with anti-depressants and had not required inpatient counseling or psychiatric hospitalizations during the relevant period of review.  Tr. 27 (citing Tr. 541, 674).  Further, the ALJ observed that Plaintiff frequently denied having depression, little interest or pleasure in doing things, or feelings of hopelessness.  Tr. 27 (citing Tr. 679, 682, 685).  There is no evidence to suggest that Plaintiff's failure to seek treatment is attributable to her mental impairment rather than a personal preference.  The ALJ reasonably relied on this evidence in evaluating Plaintiff's symptom claims.

## B. Lay Opinion Evidence

Plaintiff challenges the ALJ's rejection of the lay witness statements of her boyfriend, Troy Vella.  ECF No. 14 at 14-16.  An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.  *Molina*, 674 F.3d at 1114; *see Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony).  The ALJ may reject

lay opinion testimony that essentially reproduces the claimant's discredited

testimony. *See Valentine*, 574 F.3d at 694.

The ALJ considered a third-party function report dated August 30, 2015 from

Mr. Vella and assigned limited weight to his statements. Tr. 292-99. Mr. Vella

reported that Plaintiff was unable to sit or stand for long periods of time, and her

ability to walk was limited by her fatigue and "excruciating pain." *Compare* Tr.

292 *with* Tr. 280 (Plaintiff stated in her function report, also dated August 30,

2015, that she was unable to stand or sit "for more than a few minutes at a time").

Mr. Vella stated that Plaintiff had to lie down to relieve her symptoms. *Compare*

Tr. 292 *with* Tr. 280 (Plaintiff reported that she "ha[d] to be able to lay down at

any given moment"). He stated that Plaintiff struggled to get out of bed, required

help with showering, and "struggle[d] throughout the day to find a comfortable

position." *Compare* Tr. 293 *with* Tr. 281 (Plaintiff reported that she needed help

taking a shower and she "struggle[d] to find a comfy place to relax"). He noted

that Plaintiff was unable to lift, squat, bend, stand, walk, sit, or kneel due to

overwhelming back pain. *Compare* Tr. 297 *with* Tr. 285 (Plaintiff alleged she was

unable to lift, squat, bend, stand, reach, walk, sit, kneel, or climb stairs). Mr. Vella

also reported that Plaintiff "became anxious and depressed as a result of her

disability." *Compare* Tr. 297 *with* Tr. 286 (Plaintiff stated that she had anxiety).

The ALJ was required to give germane reasons to discredit this lay witness opinion. *Nguyen*, 100 F.3d at 1467.

First, the ALJ gave limited weight to Mr. Vella's opinion because it was based on casual observation rather than objective medical testing. Tr. 30. Although "medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence," lay testimony "as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence." *Nguyen*, 100 F.3d at 1467 (emphasis in original); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). This was not a germane reason to discredit Mr. Vella's opinion.

Second, the ALJ gave limited weight to Mr. Vella's opinion because, as Plaintiff's boyfriend and roommate, he was not a disinterested party in this case. Tr. 30. "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (internal citations omitted). Mr. Vella's relationship to Plaintiff was not a germane reason to discredit his opinion.

Finally, the ALJ discounted Mr. Vella's opinion for the same reasons that he discounted Plaintiff's symptom claims. Tr. 30 ("Ultimately, this opinion is not

persuasive for the same reasons that [Plaintiff's] own allegations are not fully persuasive").  Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness's testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony.  *Valentine*, 574 F.3d at 694; *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness").  Thus, the ALJ's well-supported reasons for rejecting Plaintiff's subjective symptom claims apply equally to Mr. Vella's statements.  This was a germane reason to discredit his opinion.  Although the ALJ erred by asserting improper reasons to reject Mr. Vella's lay witness statements, these errors were harmless given the ALJ's reliance on other germane reasons that were supported by substantial evidence.  *See Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *see also Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## C.     Step Five

Plaintiff contends the ALJ erred at step five because the ALJ relied upon an RFC and hypothetical that failed to include all of Plaintiff's limitations.  ECF No. 14 at 16-17.  However, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).  A claimant fails to establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain

evidence, when the record demonstrates the evidence was properly rejected.

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

Plaintiff asserts that the ALJ improperly rejected her symptom allegations, and when the vocational expert was asked about some of these limitations, such as a need to take breaks, she testified that Plaintiff would be unable to sustain employment. ECF No. 14 at 17 (citing Tr. 60-61). Plaintiff's argument is based entirely on the assumption that the ALJ erred in discrediting her symptom allegations. *See Stubbs-Danielson*, 539 F.3d at 1175 (challenge to ALJ's step five findings was unavailing where it "simply restates [claimant's] argument that the ALJ's RFC finding did not account for all her limitations"). For reasons discussed throughout this decision, the ALJ's adverse findings in his consideration of Plaintiff's symptom allegations are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC, and he posed a hypothetical to the vocational expert that incorporated all of the limitations in the ALJ's RFC determination, to which the expert responded that jobs within the national economy existed that Plaintiff could perform. The ALJ properly relied upon this testimony to support the step five determination. Therefore, the ALJ's

step five determination that Plaintiff was not disabled within the meaning of the Social Security Act was proper and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED October 18, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 29